DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

THEODORE COHEN,                        )
                                       )
        Plaintiff,                     )
                                       )
   v.                                  )   Civil Action No. 2011-0059
                                       )
GABRIEL ENTERPRISES, INC., SHURN       )
LIONEL, CURTIS LIONEL, BRENDA LIONEL,  )
AND THE UNITED STATES OF AMERICA,      )
                                       )
        Defendants.                    )
_____)

**Attorneys:**
**Eric S. Chancellor, Esq.,**
St. Croix, U.S.V.I.
    *For Plaintiff*

**Angela Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant United States of America*

**Scot F. McChain, Esq.,**
St. Croix, U.S.V.I.
    *For Defendants Gabriel Enterprises Inc.,*
    *Shurn Lionel, Curtis Lionel, and Brenda Lionel*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the Motion for Relief from Judgment, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, filed on January 11, 2013 by Defendants Gabriel Enterprises, Inc., Shurn Lionel, Curtis Lionel, and Brenda Lionel. (Dkt. No. 32). Defendants ask to be relieved of the Judgment and Order entered by the Court on December 4, 2012, granting Plaintiff Theodore Cohen's "Motion for Default Judgment against Gabriel

Enterprises, Inc., and the Lionel Defendants." (Dkt. No. 29). For the reasons discussed below, the Court will grant in part and deny in part Defendants' motion.

## BACKGROUND

On May 19, 2011, Plaintiff Theodore Cohen filed a Complaint against Gabriel Enterprises, Inc., Shurn Lionel, Curtis Lionel, and Brenda Lionel (the "Lionel Defendants") and the United States of America in the Superior Court of the Virgin Islands, alleging that Gabriel Enterprises, Inc. breached a September 5, 2008 Promissory Note and Mortgage regarding certain property ("the Property") described as:

> Plot No. 1-C of Parcel 3 of Estate Orange Grove, Company Quarter, St. Croix, United States Virgin Islands, consisting of 0.4534 U.S. acres, more or less, as more fully shown on OLG Drawing No. 1612 dated July 15, 1964, revised January 19, 1996.

(Compl. ¶ 7, Dkt. No. 1-2). The Complaint alleged that Shurn Lionel, Curtis Lionel, and Brenda Lionel "unconditionally guaranteed payment of the said promissory note" in the face value of $320,000.00; that the Lionel Defendants defaulted on their obligations under the Promissory Note and Mortgage by failing to make payments as required; and that they refused to pay the amounts owing, despite demand having been made. *Id*. at ¶¶ 5-8. Plaintiff sought foreclosure of the Property and damages from the Lionel Defendants. *Id*. The Complaint provided that the principal amount due and owing was $320,000.00, plus interest accruing at the rate of 12% per annum from April 5, 2011, late payment penalties, costs, and attorney's fees. *Id.* at ¶ 10. Plaintiff also named the United States of America as an entity claiming an interest in the Property. *Id.* at ¶ 11. On June 10, 2011, the United States removed this case from the Superior Court to this Court. (Dkt. No. 1).

2

In July 2011, Plaintiff filed Applications for Entry of Default against Brenda Lionel, Curtis Lionel, Shurn Lionel, and Gabriel Enterprises. (Dkt. Nos. 2, 3, 4, 5). The Clerk of the Court entered defaults against all of the Lionel Defendants on August 1, 2011. (Dkt. Nos. 6-9). Plaintiff filed a Motion for Default and Summary Judgment in October 2011, seeking default judgment for debt and foreclosure against the Lionel Defendants for the entire amount due under the Note and Mortgage ($320,000.00), plus expenses, interest, and attorney's fees. (Dkt. No. 14). Plaintiff also sought summary judgment against the United States on the ground that Plaintiff's mortgage lien took priority over the lien of the United States. (Dkt. No. 15).

On December 4, 2012, the Court granted Plaintiff's Motion for Default Judgment for debt and foreclosure on the Property against the Lionel Defendants and Plaintiff's Motion for Summary Judgment against the United States. (Dkt. Nos. 29, 30). On December 10, 2012, Plaintiff filed a Praecipe requesting the Clerk of Court to issue a writ of execution and attach the Property. (Dkt. No. 31).

On January 11, 2013, the Lionel Defendants filed the instant Motion for Relief from Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. They assert that they inherited the Property (a gas station and convenience store)—along with "a mountain of financial problems"—upon the death of their father in June 2004, when they were in their early twenties. (Dkt. No. 32 at 2). They cite to a "Reminder" (the "Reminder Note") from Plaintiff, dated December 8, 2010, which provides:

"REMINDER"

**Balloon Payment on La Grande Princesse Gas Station due on December 23, 2010**

If you do not have the $250,000.00, your interest rate will increase to 15% and your new payment will be $3,125.00 starting January 23, 2011. You then

3

>have six (6) months to come with the $250,000.00. If this is not settled by June 23, 2011, I will start foreclosure.
>
>>This will be as the identical contract applied to the Golden Rock Station [the Property].
>>
>>Thank you,
>>Ted Cohen

(Dkt. No. 32-1).

The Lionel Defendants argue that their "youth, inexperience with the legal system, lack of experience managing a distressed business, and grief over their father's passing, combined with lender Ted Cohen's written promise that he would not foreclose until June 2011 [as set forth in the Reminder Note], led the Plaintiffs to believe that no response was necessary to the summons and complaint served on them in May [2011]."). (Dkt. No. 32 at 6; *see id.* at 3). The Lionel Defendants also assert that they have a number of "prima facie defenses" to Plaintiff's claims: breach of contract, breach of the duty of good faith and fair dealing, fraud, damages, and predatory lending-equitable estoppel. *Id.* at 6-7; *see also* Dkt No. 36. Shurn, Curtis, and Brenda Lionel submitted identical affidavits describing their grief over their father's death and the general difficulties they experienced in managing two gas stations. They averred that because of their lack of familiarity with the legal system, coupled with Plaintiff's note that he would start foreclosure in June 2011, they "did not know [they] had to respond to the summons and complaint" served in May 2011. (Dkt. Nos. 32-2, 32-3, 32-4).

Plaintiff opposed the Lionel Defendants' Rule 60(b) motion. Plaintiff argues that the circumstances here do not demonstrate excusable neglect but rather a "willful, calculated, and strategic decision not to reply" until one-and-one-half years after the foreclosure action was filed and Plaintiff was awarded judgment. (Dkt. No. 34 at 3-4).

## APPLICABLE LEGAL PRINCIPLES

A decision to set aside an entry of default and default judgment is governed by Fed. R. Civ. P. 55(c) and 60(b), and is left to the discretion of the court. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Rule 55(c) provides: "The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Rule 60(b) provides in relevant part: "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). It is well-established in the Third Circuit that, "in passing upon default judgments[,] Rule 60(b) should be 'given a liberal construction. . . . Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." *Feliciano v. Reliant Tooling Co., Ltd.,* 691 F.2d 653, 656 (3d Cir. 1982) (quoting *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir. 1951)).

The Lionel Defendants have sought relief from final judgment based on excusable neglect. The Third Circuit has determined that district courts should consider three factors when deciding whether to exercise their discretion in granting or denying a motion to set aside a default judgment based on excusable neglect under Rule 60(b)(1): "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

With regard to the underlying claim, to succeed in a debt/foreclosure action under Virgin Islands law, "the plaintiff must show: (1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is

5

authorized to foreclose on the property mortgaged as security for the note." *Thompson v. Fla. Wood Treaters, Inc.,* 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009) (citing *Nat'l Union Fire Ins. Co. v. Saunders*, 899 F. Supp. 452, 455 (C.D. Cal. 1993)).

## ANALYSIS

Plaintiff asserted claims for both debt and foreclosure on the Mortgage, and the Judgment and Order filed on December 4, 2012 addressed each claim. (Dkt. No. 29). The Court will analyze separately whether it should reopen the default judgment on each claim.

### A. Judgment of Foreclosure

#### 1. Meritorious Defense

The Third Circuit considers the meritorious defense factor the "threshold issue in opening a default judgment." *Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir. 1984). Defendants do not "have the right to have a default judgment set aside automatically upon alleging a defense." *Harad v. Aetna Cas. & Sur. Co*., 839 F.2d 979, 982 (3d Cir. 1988). Rather, defendants must "set forth with some specificity the grounds for this defense," and the court will then look at the substance of that defense to determine whether it is meritorious. *Id.* In doing so, the court "need not decide the legal issue" at this stage of review. *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir. 1987). "To show a meritorious defense, a plaintiff must assert defenses that would constitute a complete defense to the action." *World Entm't v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012).

Here, the Lionel Defendants do not contest that they are liable under the Note and Mortgage; that they are in default under the terms of the Note and Mortgage; and that, under the terms of the loan documents, Plaintiff was authorized to foreclose on the Property mortgaged as security for the Note. All of their defenses, except damages and predatory lending, focus on the

6

effect of the Reminder Note.[1] The Lionel Defendants regard the December 2010 Reminder Note as modifying the September 2008 loan documents (the Mortgage, Note, and Payment Guarantee) and creating a legally binding obligation on Plaintiff "not to foreclose until June 2011 in exchange for an additional six months of financing at a rate of 15% on a secured loan." (Dkt. No. 32 at 7). The Lionel Defendants go on to say that "[t]his offer was accepted and payments were made, thus establishing the formation of a modification of the loan contract," which was broken by Plaintiff when he foreclosed in May, rather than June, 2011. *Id.*

The Lionel Defendants do not explain how they accepted the "offer" allegedly contained in the Reminder Note—which, on its face, related primarily to Plaintiff's loan to them concerning another service station and only ambiguously referred to the Property at issue. They did not sign the Reminder Note which, in usual practice, would indicate their agreement to new terms. *See, e.g., Reynolds v. Islands Mech. Contractors, Inc.*, 2010 WL 4683719, at *3 (D.V.I. Nov. 12, 2010) ("A signature indicates assent and thus binds the signatory to the contract unless he or she can show special circumstances relieving him or her of such an obligation.") (internal quotation marks omitted). Nor do they persuasively explain how their course of conduct manifested acceptance of the offer. *See* Restatement (2d) of Contracts § 22, cmt. b (1981) (discussing the manifestation of mutual assent—offer and acceptance—by course of conduct). Indeed, the Lionel Defendants focus solely on the *benefit* they purportedly received from the Reminder Note—Plaintiff's promise to forebear on filing a foreclosure action—but ignore completely any corresponding obligations the Reminder Note presumably imposed upon them. By their own admission, they made payments only through March 2011—an admission which

---

[1] The damages defense actually goes to the debt cause of action; the remaining defenses go to the foreclosure cause of action.

suggests that *they* apparently breached their obligations set forth in the purported newly-modified "contract" approximately two months *before* Plaintiff allegedly breached the contract by filing the foreclosure action a month early.[2] The Lionel Defendants' failure to make payments on the loan documents after March 2011 renders incomprehensible their claim that they "lost the ability to fulfill the contract and avoid litigation" when Plaintiff filed the foreclosure action two months later in May 2011. (Dkt. No. 32 at 7).

Moreover, even if the Court were to credit the Lionel Defendants' claim of a modified contract, their alleged reliance on the Reminder Note, and their assertion that they considered the Summons and Complaint only a "notice" that required no response (Dkt. No. 32 at 3, 6, 7), the Lionel Defendants fail to explain why the balance on the loan was not paid by the June 23, 2011 date in the Reminder Note. If the Lionel Defendants believed, as they claim, that the Summons was simply a notice, it is difficult to understand why, as a result thereof, they would have "lost the ability to fulfill the contract. . ." (Dkt. No. 32 at 7). The Defendants provide no explanation. Nor do they explain why the "modified contract" upon which they were purportedly relying was not fulfilled at any time during the one-and-one-half years between the June 23, 2011 due date and the entry of default judgment. Thus, even if the Court were to rely on the alleged modified agreement, the Lionel Defendants have failed to explain how their alleged contract and fraud

---

[2] Noticeably absent from Defendants' submission is any indication of how *much* they paid through March 2011, including whether the amount included the additional interest charges referenced in the Reminder Note. Further, the specific terms of the purported modification as it relates to the Golden Rock gas station (the "Property") are absent from the Reminder Note, and Defendants do not shed any light in this regard. In addition, Defendants' reference to the fact that Plaintiff has not sought the 15% interest rate on the debt raises some question as to whether Defendants included the higher interest rate in their payments, or whether there was a modification at all, since Plaintiff apparently did not charge the 15% interest rate. (Dkt. No. 32 at 9 n.1).

defenses would allow them to avoid the conclusion that they defaulted on their obligations under the Note and Mortgage, and that Plaintiff is entitled to foreclose on the Property.

With regard to the predatory interest rate defense, the Lionel Defendants claim that Plaintiff's 12% and 15% interest rates constitute a predatory lending practice that took advantage of their youth, business inexperience and financial need. They add that Plaintiff should be "equitably estopped" from charging 15% interest on the debt after December 2011 since he did not uphold his agreement to forebear on the foreclosure. (Dkt. No. 32 at 9). In a footnote, the Lionel Defendants indicate that they are raising the 15% issue "prophylactically as Plaintiff has not sought interest at 15% at this time." (Dkt. No. 32 at 9 n.1).[3]

The Lionel Defendants have not "set forth with some specificity the grounds for this defense." *Harad*, 839 F.2d at 982. When seeking to set aside a default judgment, "something more than bare conclusory statements are required to demonstrate that Defendant has a meritorious defense." *CitiBank, NA v. Hamorski*, 2009 WL 3102477, at *1 (M.D. Pa. Sept. 24, 2009). Moreover, because the Lionel Defendants acknowledge that Plaintiff has not charged interest at 15%, there is no factual basis for their claim that this rate constitutes a predatory lending practice in which Plaintiff engaged. For these reasons, the Court concludes that Defendants have failed to demonstrate the validity of this defense.

The Lionel Defendants have not shown that they could win at trial on the merits of the foreclosure claim. As was the case in *Hamorski*, they have "come forward with no evidence suggesting that [they] are not in default on the mortgage. While Defendant[s] set[] forth various alleged defenses to Plaintiff's case, none of these defenses go to the underlying contractual

---

[3] Plaintiff's Complaint (Dkt. No. 1-2), as well as his Affidavit of Proof (Dkt. No. 15-5), indicate that Plaintiff was assessing interest at the rate of 12% per annum, not 15%.

default." *Hamorski,* 2009 WL 3102477, at *1. Failure to establish a meritorious defense, as is the case here, "weighs heavily against setting aside the default." *Brown*, 487 F. App'x at 761 (citing *$55,518.05 in United States Currency*, 728 F.2d at 195). Indeed, such a failure has been deemed to be a sufficient basis, in itself, to decline to set aside a default judgment. *See $55,518.05 in United States Currency*, 728 F.2d at 195 (declining to consider prejudice and culpability when the defendant failed to establish a meritorious defense). In any event, an analysis of the other factors here point to the same conclusion.

### 2. The Lionel Defendants' Culpable Conduct

In assessing culpable conduct in the context of setting aside the default judgment, the Court considers whether the Lionel Defendants' actions were "taken willfully or in bad faith." *Gross v. Stereo Component Systems, Inc.,* 700 F.2d 120, 124 (3d Cir. 1983). A defendant's culpable conduct "weighs heavily in the evaluation of whether to grant or set aside a default judgment." *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 652 F. Supp. 2d 599, 604 (E.D. Pa. 2009) (citing *Farnese v. Bagnasco*, 687 F.2d 761 (3d Cir. 1982)). Under the circumstances here, the Court concludes that the Defendants' actions exhibited willfulness.

The Lionel Defendants explained that their erroneous conclusion that a response to the Summons and Complaint was not necessary can be attributed to their "youth, inexperience with the legal system, lack of experience managing a distressed business, and grief over their father's passing, combined with lender Ted Cohen's written promise that he would not foreclose until June 2011. . . ." (Dkt. No. 32 at 6). However, by the time they were served with the Summons and Complaint in 2011—seven years after their father's death—they were 30 and 31 years of age and had been managing the Property and engaging in business transactions for several years. Indeed, the particular loan transaction at issue was entered into by the parties in 2008—four

years after the passing of Defendants' father. Further, according to Plaintiff, he extended a total of four loans to the Lionel Defendants after their father's death, two of which were timely paid. (Plt.'s Aff., Dkt. No. 34-1). Plaintiff further noted that the Lionel Defendants negotiated the various loans with the assistance of an accountant. *Id.* Thus, the totality of the circumstances suggest that Defendants were not as young, unsophisticated in business transactions, incapable of obtaining assistance when needed, and naïve as their Motion would suggest.

Moreover, even if the Lionel Defendants were under the belief that Plaintiff would not attempt to foreclose on the Property until June 2011, based on the "terms" of the Reminder Note, that belief does not excuse their failure to respond to the Summons and Complaint served on them personally in May 2011. The clear language of the Summons required the Lionel Defendants to file an answer or other defense "within twenty (20) days after service of this summons, excluding the date of service." (Dkt. No. 2-3). The Summons also warned that "in case of your failure to appear or answer, judgment by default will be taken against you as demanded in the complaint, for action for debt." *Id.* The Lionel Defendants' decision—apparently without even an inquiry—to disregard the Summons and Complaint, notwithstanding the plain language of the Summons, evinces their culpable conduct. *See Brown*, 487 F. App'x at 761 (affirming district court's finding of culpable conduct where defendant's behavior showed "willful disregard for responding to Plaintiffs' legal communications."); *Howard Johnson Int'l v. Patel*, 2011 WL 2148575, at *4 (D.N.J. May 31, 2011) ("The Court presumes that [defendants] acted culpably because they have 'failed to answer, move, or otherwise respond.'") (quoting *Stonebridge Bank v. Nita Props., LLC*, 2011 WL 380759, at *6 (D.N.J. Jan. 31, 2011)); *Mazengo v. Mzengi*, 542 F. Supp. 2d 96, 99 (D.D.C. 2008) (holding that "[i]gnorance of one's legal obligations does not constitute the type of 'mistake' or 'neglect' that Rule 60(b)(1) excuses.").

Finally, as noted earlier, nothing prevented the Lionel Defendants from curing the default at any time during the year and a half between the filing of this case in May 2011 through the entry of the default judgment in December 2012. Defendants' failure to make a single payment—let alone cure the default—is further indication of the willfulness of their actions.

In view of the foregoing, the Court concludes that the Lionel Defendants' conduct was willful and that these circumstances weigh against setting aside the default.

### 3. Prejudice to Plaintiff

Plaintiff claims he will be prejudiced if the Court sets aside the default judgment because the value of the collateral has substantially deteriorated since the loan was made; the collateral continues to lose value; and he is concerned that he may not be able to recover the entire amount owed to him. (Dkt. No. 34-1). *See Hamorski*, 2009 WL 3102477, at *2 ("Further delay would only serve to increase the losses already suffered by Plaintiff."); *cf. Cathay Bank v. Green Natural Food, Inc.*, 2010 WL 1541509, at *2 (D.N.J. Apr. 19, 2010) ("The Court finds that the longer Plaintiff does not receive payment, the more it is harmed. Therefore, if default were denied, Plaintiff would likely be prejudiced."). The Lionel Defendants argue that these conditions may not continue and Plaintiff's "temporal claims of prejudice . . . are simply not logical or persuasive." (Dkt. No. 35 at 3). They argue that "[t]he glut *may* evaporate, the economy *may* improve and another company *may* revive the [Hovensa] refinery." *Id.*

In *Feliciano*, the Third Circuit discussed the prejudice factor in the context of considering the opening of a default judgment. The Court wrote: "Delay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceedings." *Feliciano*, 691 F.2d at 656-57.

Here, however, Plaintiff is not so much asserting that he would be prejudiced by a "*[d]elay* in realizing satisfaction on a claim. . . ." *Id.* (emphasis added). Rather, his ability to "*realiz[e] satisfaction* on [his] claim" would be impacted because he has averred, without challenge, that the value of the Property has substantially deteriorated and will continue to deteriorate—thus making it ever more remote that he will be able to satisfy his claim the longer the proceeding takes. The Lionel Defendants do not challenge Plaintiff's contention that the value of the Property has deteriorated and continues to do so. Their response that the conditions that contributed to the deterioration in value *may* not continue is wholly speculative. Accordingly, the Court finds that the prejudice factor weighs in favor of setting aside the default.[4]

### 4. Conclusion

The lack of a meritorious defense, the Lionel Defendants' culpability, and the prejudice to Plaintiff if the default judgment is set aside, all weigh against setting aside the default judgment under Rule 60(b)(1). Accordingly, the Court concludes that the Lionel Defendants have not carried their burden under Rule 60(b)(1) of demonstrating that the Court's entry of default judgment on the foreclosure portion of the case should be set aside.

### B. Damages

The Lionel Defendants have also asserted a damages defense, which goes to the amount of the debt rather than to any of the elements necessary to prove the foreclosure cause of action. They state that "Plaintiff's calculation of interest and attorneys fees are incorrectly calculated as [the Lionel Defendants] made payments through March 2011 which are not reflected in the

---

[4] Even assuming there was no prejudice to Plaintiff, the strength of the other two factors—in Plaintiff's favor—would nonetheless cause the Court to conclude that the foreclosure judgment should not be set aside.

calculations made by Plaintiff for damages." (Dkt. No. 32 at 9). The Lionel Defendants assert that an accurate calculation would reduce the interest computation "substantially." *Id.*

Although the Lionel Defendants do not present any evidence that they made payments on the loan through March 2011, the Court is nevertheless cognizant of the Third Circuit's "policy disfavoring default judgments and encouraging decisions on the merits[.]" *Harad*, 839 F.2d at 982. Accordingly, in light of the Lionel Defendants' assertion that they have made payments through March 2011 that have not been credited by Plaintiff and thus were not reflected in this Court's Judgment, the Court will exercise its discretion to set aside the debt portion of the default judgment in order to permit the Lionel Defendants to submit evidence that goes to the calculation of the amount of the debt owed.

The Lionel Defendants shall present to the Court by April 11, 2013 a detailed accounting, supported by documentation, showing the amounts they paid on the mortgage at issue "through March 2011 which are not reflected in the calculations made by Plaintiff for damages." (Dkt. No. 32 at 9). They shall also show the method by which they arrived at this figure which they believe represents the sum total of their payments for which they should be credited. Plaintiff will be permitted to file a response by May 2, 2013, in which he shall support any disputed amounts by appropriate documentation, concerning how much the Lionel Defendants have paid on the loan, and how much Plaintiff claims is due on the debt owed.

## CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part Defendants' Motion for Relief from Judgment. The Court denies the Lionel Defendants' motion to the extent that they seek to set aside the default judgment of foreclosure, and grants their motion to the extent

that they seek to set aside the default judgment to show how much they paid on the loan at issue, through and including March 2011.

An appropriate Order accompanies this Memorandum Opinion.

Date: March 21, 2013 _____/s/_____
WILMA A. LEWIS
District Judge